# United States District Court, Northern District of Illinois

JSb

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2820 | **DATE** | 7/17/2000 |
| **CASE TITLE** | S.N.A. Nut Company vs. The Haagen-Dazs Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court affirms the bankruptcy court's ruling denying Haagen-Dazs' jury demand. The court enters judgment in favor of S.N.A. Nut Company and against Haagen-Dazs Company in the following amounts: Almond contract - $135,260.98, Walnut contract - $150,524.73, Macadamia brittle - $320,353.80, Macadamia fines - $19,453.60 and Macadamia minis - $46,775.60 for a total amount of $672,368.71 plus prejudgment interest at the rate of 5% pursuant to 815 ILCS Section 205/2.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 1 8 2000 date docketed | 15 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 00 JUL 17 PM 4:00 | date mailed notice mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

FILED
JUL 17 2000
Judge Harry D. Leinenweber
U.S. District Court

DOCKETED
JUL 18 2000

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

S.N.A. NUT COMPANY,

Debtor,

Case No. 94 B 5993

Hon. Erwin I. Katz

S.N.A. NUT COMPANY,

Plaintiff,

v.

THE HAAGEN-DAZS COMPANY,

Defendant.

Case No. 00 C 2820

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

S.N.A. Nut company, a debtor in bankruptcy, sued The Haagen-Dazs Company, a maker of ice cream to which it supplied nut products, for alleged breach of five separate contracts. The parties agree that this is a "non-core" proceeding related to S.N.A.'s bankruptcy and is governed by 28 U.S.C. § 157(c). The bankruptcy court heard six witnesses, reviewed deposition testimony of four witnesses and issued a twenty-six-page recommendation of findings of fact and conclusions of law, generally finding in favor of S.N.A. and proposing a final judgment in S.N.A.'s favor in the amount of $921,978.49. Prior to the trial the bankruptcy court considered several motions for summary judgment on a variety of

subsidiary issues, rejecting some and granting others. *See S.N.A. Nut Company v. Haagen-Dazs Company*, 215 B.R. 1004 (N.D.Ill. 1997) and *S.N.A. Nut Company v. Haagen-Dazs*, 226 B.R. 869 (N.D.Ill. 1998).

Haagen-Dazs has now filed its objections to many of the proposed findings as well as to the summary judgments entered prior to trial. S.N.A. has objected to and moves to strike the Haagen-Dazs' objections on a number of grounds: first, that Haagen-Dazs seeks review of interlocutory orders; second, it fails to identify specific findings and conclusions to which it is objecting, and improperly fails to support its objections with citations to the record.

**DISCUSSION**

The court denies the motion to strike. Haagen-Dazs is correct when it argues that the proposed findings of fact and conclusions of law must include all interlocutory rulings that comprise the whole because otherwise a party could insulate an error of the bankruptcy judge by getting a ruling prior to trial. S.N.A. cited this court's ruling in *One-Eighty Investments, Ltd.*, 72 B.R. 35 (N.D. Ill. 1987) in support of its argument. However in that case the interlocutory ruling that the court refused to review was the denial of summary judgment prior to trial. This clearly is the type of pretrial ruling that is not subject to review under Section 157(c) because the issue will be again presented after

trial which is the case here. Certainly a ruling denying judgment for Haagen-Dazs on *res judicata* grounds as well as rulings denying affirmative defenses become conclusions of law review able at the end of the case the same as the conclusions of law made after trial to be presented to this court when this court considers entry of a final judgment. While Haagen-Dazs' objections are not as clearly directed toward specific findings of fact and conclusions of law as the court might like nevertheless they do constitute objections and are entitled to be considered by the court before entry of judgment.

The Haagen-Dazs objections to pre-trial rulings include denial of summary judgment on grounds of *res judicata*, and rejection of the defenses of equitable estoppel, mend the hold, and abandonment, and establishment of certain contract periods for macadamia nut and almond contracts. The trial objections include failure of the bankruptcy court to find that Haagen-Dazs was entitled to its three affirmative defenses presented at trial: (1) whether S.N.A.'s failure to tender goods excused Haagen-Dazs from performance; (2) whether S.N.A. repudiated the contracts; and (3) whether Haagen-Dazs was entitled to cover a temporary shortage in S.N.A.'s ability to supply almonds. The court finds that all of the bankruptcy judge's pretrial and trial rulings were correct with the exceptions concerning the almond and walnut contracts.

## Trial Rulings

As found by the bankruptcy court, due to freshness concerns, S.N.A. did not manufacture all of the goods at once. Haagen-Dazs supplied usage forecasts and S.N.A. manufactured in response to these forecasts. S.N.A. supplied Haagen-Dazs with weekly inventory summaries showing how much product it had on hand. These reports did not reflect work in progress. As Haagen-Dazs needed product it called S.N.A.'s broker who arranged delivery. Haagen-Dazs agreed to purchase 630,000 pounds of almonds at $3.75 per pound by August 31, 1994. Haagen-Dazs had communicated to S.N.A. that its needs for the spring and summer months would be approximately 90,000 pounds of almonds a month. S.N.A. performed satisfactorily until the involuntary petition in bankruptcy was filed on March 4, 1994. Shortly thereafter S.N.A.'s broker, Hank Rich, informed Haagen-Dazs that S.N.A. was temporarily unable to process almonds for Haagen-Dazs because of financial problems associated with the bankruptcy. He suggested that Haagen-Dazs obtain an alternate supplier of almonds. Significantly Haagen-Dazs was not told how long the almond supply problem would last. There is no further communication from S.N.A. to Haagen-Dazs until Rich's letter of June 9, 1994, to the effect that S.N.A. was going to be able to resume shipments of almonds. In that letter Haagen-Dazs was reminded that there were 479,000 pounds of almonds remained to be pulled under the almond contract. The quantity remaining does not

take into account that Haagen-Dazs obtained almonds from an alternate source and was entitled to credit for these purchases. Haagen-Dazs responded in writing one week later advising S.N.A. that it had been forced by S.N.A.'s inability to supply almonds to purchase product from other sources. In that letter Haagen-Dazs advised S.N.A. that it had indeed purchased approximately 218,000 pounds of almonds from alternative sources in the March through May period. As indicated above, the record fails to disclose any communication from S.N.A. to Haagen-Dazs during that three-month period stating that it was able to meet Haagaen-Dazs' almond requirements. It is therefore the finding of this court, and the finding of the bankruptcy judge to the contrary is overruled, that the purchase of 218,000 pounds of almonds by Haagen-Dazs from alternative sources during the period of March through May 1994 was commercially reasonable and goes to reduce the contract amount. However, the court agrees that from June onward Haagen-Dazs had no excuse not to purchase almonds from S.N.A. and the failure to do so constituted breach of contract. S.N.A. points out that its contract with Haagen-Dazs made each shipment a separate contract and failure to deliver on a prior portion would not affect the balance. This is true as to the requirement for future purchases, but failure to deliver a portion of the contract balance reduces the balance remaining to be delivered. The bankruptcy judge so found when it gave Haagen-Dazs a one month credit of 90,000 pounds

of almonds for contract repudiation. The Court's disagreement with the Bankruptcy Judge is over the amount, not the fact of, the credit. The court will, therefore, recalculate the damages for the breach of the almond contract based on a shortfall of 167,750 pounds of almonds rather than 385,600 pounds of almonds.

As found by the bankruptcy judge, S.N.A. had 100,096 pounds of finished almonds at the expiration of the contract which it sold to others at an average price of $2.80 per pound compared to the contract price of $3.85 per pound. Thus the loss on finished almonds will remain the same, *i.e.*, $105,101.00. The bankruptcy judge also found that S.N.A. had 187,069 pounds of raw almonds on hand that had been purchased for Haagen-Dazs which it sold for $1.44 per pound. The bankruptcy judge however found that Haagen-Dazs' cost was $2.59 per pound for a difference of $1.15 per pound for which S.N.A. claimed a loss of $215,129.00 and which the Bankruptcy Judge allowed. However, the judge also found that it takes two pounds of raw nuts to make one pound of finished product. Therefore, the bankruptcy judge's damage calculation can't be right. According to S.N.A.'s Ex. 120, its raw material price for finished almond pieces was $2.59 per pound which would mean that its raw material cost was $1.30 per pound ($2.59 ÷ 2) so that, rather than losing money, it made a profit of 14¢ per pound on the sale of the raw almonds. Thus had Haagen-Dazs not breached the contract it would have purchased 66,654 pounds more of finished

product (385,600 - 217,950 = 167,750 - 100,096 = 66,654) which would have utilized 133,308 pounds of raw almonds (66,654 x 2 = 133,308). Its loss would be $256,617.90 (66,654 x $3.85) less $207,693.86 finished goods cost (66,654 x $3.11) less the profit on raw material of $18,663.12 (133,308 x .14) for a total loss of $30,260.98.

The bankruptcy judge's findings of damages for the walnut contract contain the same error. According to his findings of fact, S.N.A. had 6,411 pounds of raw walnuts on hand for Haagen-Dazs' needs which it sold for $1.44 per pound. These raw almonds would have yielded 3,205 pounds of finished goods. According to Ex. 120 its cost of raw materials was $2.40 per pound for the finished product. These 3,205 pounds of finished goods would have brought it $13,236.65 in gross proceeds (3,205 x $4.13). Subtracted would be the cost of finished goods, $10,880.98 (3,205 x $3.395), and the profit realized on the walnuts of $1,538.64 (6,411 x ($1.44 - $1.20)), or a total loss of $817.03. Thus, the total loss on the walnut contract is reduced to $150,524.73 ($6,155.00 found by the bankruptcy judge reduced to $817.03).

The remaining objections regarding Haagen-Dazs failure to purchase the agreed upon amounts of walnuts and the various macadamia nuts are overruled. Haagen-Dazs has not come up with any justifiable reasons for its breach. There never was any indication that S.N.A. could not meet Haagen-Dazs' demands for products other

than almonds on a timely or quality basis. In order to be entitled to coverage under a contract there either must have been a failure to tender or non-conforming tender. There was no such evidence introduced at the trial. As regards Haagen-Dazs' tender defense, the bankruptcy court was correct in rejecting it because a course of dealing under a supply contract where the buyer notifies the seller when deliveries are required, failure to call for delivery excuses tender. *Great Western Sugar Co. v. World's Finest Chocolate, Inc.*, 523 Nee.2d 1149, 1154-55 (Ill. App. 1988).

Next, Haagen-Dazs objects to the denial of its mitigation defense. The evidence supports the bankruptcy judge's finding that S.N.A. stopped production after it was clear that Haagen-Dazs was breaching the contract. The evidence also disclosed that S.N.A. had been told by Haagen-Dazs that it should stock a minimum level of 90 days inventory of product. There was evidence of considerable effort on S.N.A.'s part to sell the finished goods. All goods were sold with the exception of those that had become rancid which of course had to be destroyed.

With regard to damages the Bankruptcy court with the above exceptions concerning almond and walnuts was correct in its damage analysis. With regards to goods not manufactured, UCC S2-708(2) provides for the contract price less expenses saved by not manufacturing the goods.

The bankruptcy judge awarded prejudgment interest based on the Illinois statute allowing interest for debts resulting from a written contract and whose amount can be readily ascertained. 815 ILCS § 205/2. While a written contract constitutes an instrument in writing under § 205/2, the issue is whether the document prepared by S.N.A. which was not signed by Haagen-Dazs is such an instrument in writing. According to the Seventh Circuit, the instrument to qualify under Section 205/2 must create the indebtedness. *Arthur Pierson & Co. v. Provimi Veal Co.*, 887 F.2d 837, 840 (7th Cir. 1989). The evidence seems clear that the indebtedness was created by the writing originating from S.N.A. because by consistent course of dealing between the parties the document was agreed to state the terms governing the transactions between the parties. Thus the writing as found by the bankruptcy judge was a writing within the meaning of Section 205/2 because it forms the basis for the indebtedness. The amounts are readily ascertainable based on the writing. Good faith disputes do not prevent the imposition of pre-judgment interest. As explained in *Hass v. Cravatta*, 27 Ill. Dec. 414, 419 (Ill. App. 1979), the refusal to pay a debt, even in good faith, means the debtor has the use of the disputed funds until a court rules against him. A creditor, denied payment of a sum rightfully his, loses not only that sum but the right to use it. The fact that the debt was unliquidated also does not prevent imposition of pre-judgment

interest. "It is enough if it contains a formula from which that amount can be computed with reasonable accuracy." *Residential Marketing Group v. Granite Inv. Group*, 933 F.2d 546, 549 (7th Cir. 1991). Computation of damages in this case is governed by Illinois law and is thus easily computed.

### Pre-Trial Rulings

The bankruptcy judge denied in a pre-trial ruling Haagen-Dazs' motion for summary judgment based on a *res judicata* defense. Its argument was based on the Court's confirmation order approving a plan of reorganization. The reason the Bankruptcy Court gave for the denial of summary judgment was its determination that there was no identity of cause of action between the present proceeding and the Chapter 11 proceeding. As pointed out by the bankruptcy judge the purpose of a Chapter 11 proceeding is to give a debtor a breathing spell from paying creditors, so as to give it an opportunity to restructure its liabilities and business operations. To require all potential claims to be filed and litigated as part of that proceeding would needlessly complicate and prolong the Chapter 11 proceeding. It certainly is not necessary to resolve a breach of contract action brought by the debtor prior to the entry of a confirmation order.

The bankruptcy judge made several other rulings on motions for summary judgment. He fixed the expiration dates of each of the five contracts. The judge felt that since the contract documents

contained specific termination dates, parol evidence could not be used to contradict such clear terms. The court agrees with the bankruptcy judge and affirms these rulings.

The bankruptcy judge also granted summary judgment dismissing Haagen-Dazs' affirmative defense of equitable estoppel. The gist of this defense was that S.N.A. never gave any indication that it was intending to enforce the contract against Haagen-Dazs even though it brought the suit before the expiration of the statute of limitations. Although an affirmative misrepresentation is not required to prove equitable estoppel, nevertheless there must be something done that would mislead the opposition to its detriment. The evidence did show that S.N.A. had demanded that Haagen-Dazs perform under its contracts which it refused to do. Haagen-Dazs has also failed to prove that it suffered any detriment as a result of S.N.A.'s conduct. The court therefore affirms this ruling of the bankruptcy court.

The bankruptcy judge also ruled that Haagen-Dazs had waived the affirmative defenses of "mend the hold," and the defense of repudiation and abandonment by not raising them in the pre-trial order. These rulings were well within his discretion and the rulings are affirmed.

The bankruptcy judge also struck the jury demand filed by Haagen-Dazs. He held that Haagen-Dazs had waived its right because it filed a proof of claim in the debtor's Chapter 11 case. The

record supports this ruling. On September 6, 1996, Haagen-Dazs filed a proof of claim. Afterwards S.N.A. filed this suit to enforce the five nut contracts. The Supreme Court has held that a creditor who files a proof of claim in bankruptcy submits to the equitable jurisdiction of the court and waives its right to a jury trial. *Langenkamp v. Culp*, 498 U.S. 42 (1989); *accord In re Peachtree Lane Associates, Ltd.*, 150 F.3d 788, 798-99 (7th Cir. 1998). Accordingly the court affirms the bankruptcy court's ruling denying Haagen-Dazs' jury demand.

## **CONCLUSION**

The court enters judgment in favor of S.N.A. Nut Company and against Haagen-Dazs Company in the following amounts:

| | |
|---|---|
| Almond contract | $ 135,260.98 |
| Walnut contract | 150,524.73 |
| Macadamia brittle | 320,353.80 |
| Macadamia fines | 19,453.60 |
| Macadamia minis | 46,775.60 |
| Total Damages | $ 672,368.71 |

plus prejudgment interest at the rate of 5% pursuant to 815 ILCS § 205/2.

**IT IS SO ORDERED.**

---
Harry D. Leinenweber, Judge
United States District Court

Date: July 17, 2000